JESSICA WILLIAMS, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 37785

August 2, 2002

50 P.3d 1116

*Law Office of John G. Watkins,* Las Vegas; *Law Office of Ellen J. Bezian,* Las Vegas, for Appellant.

---

[59]*Dennis v. State,* 116 Nev. 1075, 1085, 13 P.3d 434, 440 (2000).

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *Bruce W. Nelson,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, LEAVITT, J.:

In this appeal, appellant Jessica Williams raises several claims of error relating to her conviction and challenges the constitutionality of NRS 484.379(3) on various grounds.

### *FACTS*

On March 19, 2000, while returning to Las Vegas from the Valley of Fire via Interstate 15, Williams drove her van off the road, into the median, and then struck and killed six teenagers. Testimony at trial revealed that Williams had stayed up all night on March 18, 2000. Williams admitted to using marijuana approximately two hours prior to the collision. Williams also admitted to using a designer drug, ''ecstasy,'' on the evening prior to the collision. After the collision, Williams admitted to being the driver of the van. She also voluntarily turned over her marijuana pipe to police. Residue in the pipe was subsequently analyzed and found to be marijuana. Williams was also found to be in possession of a plastic bag containing a substance that subsequent tests confirmed was marijuana. Williams gave three blood samples for testing purposes, which were subsequently analyzed and found to contain in excess of the proscribed levels of the active ingredient in marijuana and its metabolite.

Williams claimed that she fell asleep at the wheel. Several witnesses testified at trial that they saw Williams' vehicle pass them and then drift to the right. The passenger in Williams' van testified that she awoke when the van drifted into the median, then looked over and saw Williams asleep.

Williams was charged, in part, with six counts of driving while intoxicated and/or driving with a prohibited substance in her bloodstream, six counts of reckless driving, six counts of involuntary manslaughter, one count of possession of a controlled substance, and one count of using a controlled substance. After extensive pretrial motions, including challenges to the constitutionality of the prohibited substance statute, to the form of the

indictment, and to Williams' attempts to raise the issue of the county's purported negligence, Williams proceeded to trial. At the conclusion of a two-week trial, the jury was instructed that it could find Williams guilty of either the DUI, the reckless driving, or the involuntary manslaughter charges. As to the DUI charges, the verdict form contained two options for each count—one for driving under the influence and one for driving with a prohibited substance in the bloodstream. The jury was instructed that it could find Williams guilty under either or both DUI theories but that it could not find her guilty of "involuntary manslaughter and reckless [driving] and one or both of the [DUI's]."

Williams was convicted by a jury of six counts of driving with a prohibited substance in the blood or urine, one count of use of a controlled substance, and one count of possession of a controlled substance. The jury returned not guilty verdicts on the six counts of driving while under the influence, six counts of involuntary manslaughter, six counts of reckless driving, and on the single count of being under the influence of a controlled substance. Williams' subsequent motion for a new trial was denied. The judgment of conviction was entered on April 5, 2001, and Williams timely filed this appeal.

## DISCUSSION

Williams challenges the constitutionality of NRS 484.379(3) on various grounds. In addition, Williams claims that under the Double Jeopardy Clause, her acquittal of the charges pursuant to NRS 484.3795(1)(d) (driving under the influence of a controlled substance) precluded her conviction of the charges pursuant to NRS 484.3795(1)(f) (driving with a prohibited substance in the blood). Williams also claims: that the district court erred in prohibiting her from raising Clark County's purported negligence as the proximate cause of the deaths; that the failure to refrigerate her blood samples constituted destruction of evidence and violated her right to due process; and that the district court erred in refusing to conduct a suppression hearing on her motion to exclude the blood evidence until after the close of trial. We have considered these, and Williams' other claims of error, and conclude that they lack merit.

### A. Constitutionality of NRS 484.379(3)

In 1999, the Nevada Legislature enacted NRS 484.379(3), which provides, in pertinent part, that "[i]t is unlawful for any person to drive or be in actual physical control of a vehicle on a highway . . . with an amount of a prohibited substance in his blood . . . that is equal to or greater than" two nanograms per milliliter of marijuana or five nanograms per milliliter of mari-

juana metabolite.[1] The Legislature also added subsection (f) to NRS 484.3795(1).[2] Under that section, a person is guilty of a felony if the person "[h]as a prohibited substance in his blood or urine in an amount that is equal to or greater than the amount set forth in subsection 3 of NRS 484.379" and the person neglects a duty imposed by law while driving that proximately causes the death of or substantial bodily harm to another person.

At a pretrial hearing to consider the constitutionality of the prohibited substance statute, Senator Jon Porter, who initially proposed the legislation, testified that the Legislature intended to create a per se statute similar to the alcohol per se statute. During this hearing, Senator Porter noted that there were twelve different hearings on the bill and that the wording changed during the course of these hearings. The original draft of the bill provided that driving or being in control of a vehicle with "a detectable amount of a controlled substance" constituted a DUI violation.[3] The bill was subsequently amended to include a short list of controlled substances, which were deemed to be prohibited substances, and if found in a driver's system, would constitute a per se DUI violation.[4] In response to concerns over the absence of a defined level of drugs required for a conviction, the bill was amended, where possible, to include the federal standards set by the Substance Abuse and Mental Health Services Administration ("SAMHSA").[5] SAMHSA is the agency responsible for setting standards for toxicology testing of airline pilots, train engineers, and others who must be tested for drugs under federal law.

Williams challenges the constitutionality of the resulting prohibited substance statute, NRS 484.379(3), on several bases, each of which will be separately addressed.

### 1. *Equal protection*

Williams first contends that NRS 484.379(3) violates the Equal Protection Clause because it impermissibly treats drivers with proscribed levels of drugs in their systems differently from others.[6] In analyzing equal protection challenges, the appropriate level of judicial scrutiny must first be determined by considering

---

[1]1999 Nev. Stat., ch. 622, § 23, at 3415-16.

[2]*Id.* § 28, at 3422.

[3]S.B. 481, 70th Leg. (Nev. 1999) (referred to Senate Comm. on Judiciary on March 18, 1999).

[4]Hearing on S.B. 481 Before the Senate Comm. on Judiciary, 70th Leg., 6 (Nev., April 9, 1999).

[5]Hearing on S.B. 481 Before the Assembly Comm. on Judiciary, 70th Leg., 12-15 (Nev., May 5, 1999).

[6]U.S. Const. amend. XIV, § 1; Nev. Const. art. 4, § 21.

the nature of the right being asserted.[7] Statutes which involve fundamental rights (such as privacy) or which are based on suspect classifications (such as race) are subject to strict scrutiny.[8] Statutes which do not infringe upon fundamental rights nor involve a suspect classification are reviewed using the lowest level of scrutiny–rational basis.[9] Under the rational basis standard, legislation will be upheld so long as it is rationally related to a legitimate governmental interest.[10]

In a footnote in Williams' opening brief, she argues that this court should apply a strict scrutiny standard because the "right" to drive is a fundamental right. In the context of a license revocation proceeding, we have previously held that there is no constitutional right to drive; rather, driving is a privilege.[11] Other courts have similarly held that neither driving nor using illicit drugs constitute fundamental rights.[12] The appropriate level of scrutiny is thus the rational basis standard. During oral argument, Williams' counsel conceded that rational basis is the appropriate standard of review.

All statutes are presumed constitutional and the party attacking the statute has the burden of establishing that the statute is invalid.[13] The United States Supreme Court has provided the following guidelines in determining the rational basis of a statute:

> [A] legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.*"
>
> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." . . . Finally, courts are compelled

---

[7]*See Gaines v. State,* 116 Nev. 359, 371, 998 P.2d 166, 173 (2000).

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Zamarripa v. District Court,* 103 Nev. 638, 642, 747 P.2d 1386, 1388 (1987).

[12]*State v. Phillips,* 873 P.2d 706, 709 & n.5 (Ariz. Ct. App. 1994); *see also Shepler v. State,* 758 N.E.2d 966, 969 (Ind. Ct. App. 2001); *People v. Gassman,* 622 N.E.2d 845, 853 (Ill. App. Ct. 1993).

[13]*Sheriff v. Martin,* 99 Nev. 336, 340, 662 P.2d 634, 637 (1983).

. . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " "The problems of government are practical ones and may justify . . . rough accommodations—[however] illogical . . . and unscientific [the accommodations may be]." [14]

The State contends that the prohibited substance statute is rationally related to the State's interest in highway safety and in deterring illicit drug use. We agree.

In passing the prohibited substance statute, the Legislature clearly articulated its intent to follow the lead of nine other states and create a per se drug violation [15] similar to the alcohol per se statute. The Legislature considered extensive testimony before passing the law and rejected the concerns expressed by those opposed to the law, who argued it lacked a direct correlation between the prohibited drugs in a driver's system and impairment. Since the law was passed in 1999, the Legislature in 2001 had an opportunity to amend the statute and did not do so, although other aspects of the DUI statute were amended during the 2001 legislative session.

We have previously recognized traffic safety as a rational basis for upholding statutes that regulate the use of substances that may impair a person's ability to drive. [16] In considering Arizona's per se drug statute, the Arizona Court of Appeals concluded in *State v. Phillips* that banning driving by persons with any measurable amount of illicit drugs was constitutional because "the legislature

---

[14]*Heller v. Doe,* 509 U.S. 312, 320-21 (1993) (citations omitted) (emphasis added).

[15]In considering this legislation, the Legislature received information that nine other states had already enacted per se drug statutes. These states included Arizona, Georgia, Illinois, Indiana, Iowa, Minnesota, Rhode Island, South Dakota, and Utah. At the time, statutes in Arizona, Georgia, and Illinois had been challenged and found to be a proper exercise of legislative authority. Since then, Indiana and Iowa have also upheld their per se drug statutes. *Shepler,* 758 N.E.2d at 969; *Loder v. Iowa Dept. of Transp.,* 622 N.W.2d 513, 516 (Iowa Ct. App. 2000). Based on another statute providing for medical use of marijuana, Georgia concluded that as to marijuana, the per se drug statute violated the Equal Protection Clause because it treated legal and illegal marijuana users differently without a rational basis. *Love v. State,* 517 S.E.2d 53, 57 (Ga. 1999). However, Georgia has subsequently recognized the validity of the statute as applied to drivers with cocaine in their system. *See Carthon v. State,* 548 S.E.2d 649, 654 (Ga. Ct. App. 2001); *Keenum v. State,* 546 S.E.2d 288, 289 (Ga. Ct. App. 2001).

[16]*Sereika v. State,* 114 Nev. 142, 149, 955 P.2d 175, 180 (1998).

was reasonable in determining that there is no level of illicit drug use which can be acceptably combined with driving a vehicle; the established potential for lethal consequences is too great."[17] Likewise, we conclude that the governmental interest in maintaining safe highways is sufficient for our prohibited substance statute to survive a constitutional attack on the basis that it impermissibly treats drivers with the proscribed levels of illicit drugs in their system differently from others.

To the extent that Williams' argument is premised on the distinction made between legal and illegal users of marijuana, we likewise conclude that it lacks merit. This portion of Williams' argument is based on language in NRS 484.1245 that exempts substances used by persons with a valid prescription for that substance from the definition of "prohibited substances" as used in NRS 484.379(3). Williams also points to the exclusion of certain parts of the marijuana plant from the definition of "marijuana" in NRS 453.096 in asserting there could be "legal" users, as well as the fact that doctors in Nevada may prescribe Marinol[18] to certain persons.

The State contends that Nevada did not recognize any lawful users of marijuana at the time of Williams' collision or conviction.[19] In addition, the State contends that even if such a distinction existed, it would be rationally related to a legitimate state objective in deterring illicit drug use. We agree.

The Legislature could have reasonably determined that illegal use of a substance poses a greater threat to the public—and therefore warrants a harsher punishment—because unlike prescribed use, illegal use of drugs is not controlled. Specifically, a prescription is generally for a drug which has been reviewed and/or approved by the Food and Drug Administration ("FDA"), is of a specific potency, is prescribed at a certain dosage, and is often accompanied by warnings not to drive. Conversely, people who use illicit drugs do so to impair themselves–to obtain a specific effect or desired "high," which arguably makes them more likely to be unable to drive safely. Under *Heller v. Doe*,[20] this or any other reasonably conceivable rationale need not have been actually considered by our Legislature to provide a basis for upholding a statute reviewed under the rational basis test.

---

[17]873 P.2d at 710.

[18]Marinol is a drug containing one of the active ingredients in marijuana.

[19]Though Nevada voters in the 2000 election approved a referendum authorizing the Legislature to draft a medicinal marijuana statute, the referendum was passed after Williams' collision and such a statute has not yet been enacted.

[20]509 U.S. at 319-21.

We conclude that NRS 484.379(3) is rationally related to a legitimate state objective and is therefore constitutional. In doing so, we reiterate that it is the province of the Legislature to pass legislation, while our duty is to determine whether such legislation passes constitutional scrutiny and is therefore valid law.[21] Opponents of a valid statute must look to the Legislature rather than the judiciary to amend the law.

### 2. *Due process*

Williams next argues that the statute violates her right to substantive due process.[22] In this claim, Williams seems to mimic her equal protection arguments. Williams claims that the State may not deprive her of her right to drive while having "low" levels of marijuana because there is no rational, non-arbitrary connection to a legitimate purpose. In addition, Williams claims that the means utilized by the Legislature to achieve its legitimate purpose are too onerous because there is no legitimate interest in prosecuting unimpaired drivers for DUI. We conclude this argument lacks merit.

As previously discussed, there are several ways in which the statute could be rationally related to legitimate governmental objectives. One plausible rationale suffices even if not considered or articulated by the Legislature.[23] Further, when the constitutionality of a statute is examined using the rational basis standard, the state is not compelled to use the least restrictive means to reach the desired objective.[24] A statute analyzed under this standard must survive a constitutional challenge "even when there is an imperfect fit between means and ends."[25]

### 3. *Vagueness*

Williams claims that the prohibited substance statute is void for vagueness because she cannot tell what part of the marijuana plant or which marijuana metabolites are prohibited or when she has reached the levels proscribed by NRS 484.379(3).

A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that her conduct is forbidden by

---

[21]*See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

[22]U.S. Const. amend. XIV, § 1.

[23]*Heller*, 509 U.S. at 319-21.

[24]*Id.* at 320-21.

[25]*Id.* at 321.

statute.[26] While a facial attack may be asserted as to a statute that implicates constitutionally protected conduct, a statute that does not implicate constitutionally protected conduct, as in this instance, may be void for vagueness only if it is vague in all of its applications.[27] The Due Process Clause " 'does not require impossible standards of specificity in penal statutes.' "[28] Instead, a statute will be deemed to have given sufficient warning as to proscribed conduct when the words utilized have a well settled and ordinarily understood meaning when viewed in the context of the entire statute.[29] Statutes are presumptively valid and the burden is on those attacking them to show their unconstitutionality.[30] Williams thus has the burden of proving that the statute failed to provide adequate notice of the proscribed conduct.

In *Phillips,* the Arizona Court of Appeals considered the argument that Arizona's per se drug statute was unconstitutionally vague.[31] The court rejected the claim and held that the statute provided adequate warning of the proscribed conduct because none of the terms utilized in the statute defied common understanding, and interpretation of the statute was not dependent on a third party's judgment.[32] *Phillips* held that a potential offender was therefore on notice that any driver who has ingested a prohibited drug would be subject to prosecution.[33] In *People v. Gassman,*[34] the Illinois Court of Appeals rejected a vagueness challenge to the Illinois per se drug statute for similar reasons. Like the Arizona statute, the Illinois statute prohibits driving with any detectable amount of drugs in the system.[35]

Nevada's prohibited substance statute is even more explicit than the Arizona or Illinois statutes because only ten substances or metabolites are prohibited and the proscribed amount is indicated for both blood and urine levels. In addition, because the statute contains the specific amount of drug that is prohibited, there is even less need to depend on a third party's judgment.

---

[26]*United States v. Harriss,* 347 U.S. 612, 617 (1954).

[27]*Martin,* 99 Nev. at 340, 662 P.2d at 637.

[28]*Sheriff v. Vlasak,* 111 Nev. 59, 61, 888 P.2d 441, 443 (1995) (quoting *Wilmeth v. State,* 96 Nev. 403, 405, 610 P.2d 735, 737 (1980) (citations omitted)).

[29]*Id.*

[30]*Id.* at 61-62, 888 P.2d at 443.

[31]873 P.2d at 708-09.

[32]*Id.* at 709.

[33]*Id.*

[34]*Gassman,* 622 N.E.2d at 853.

[35]*See* 625 Ill. Comp. Stat. Ann. 5/11-501(a)(6) (West Supp. 2002).

The substance at issue in the present case is marijuana and its metabolite. Although marijuana is not defined in NRS Chapter 484, it is defined in NRS 453.096. A metabolite, as defined in an ordinary dictionary, means a ''product of metabolism.''[36] Considering the plain meaning of the terms, we conclude that a person of ordinary intelligence has adequate notice of the meaning of marijuana, and that marijuana metabolites are those metabolites that result from ingesting marijuana—as defined in NRS 453.096. We note that Williams appears to have clearly understood the common meaning of the term ''marijuana.'' Williams acknowledged being a regular marijuana user and turned over her pipe containing marijuana residue to a police officer at the collision site. She was also found to be in possession of a plastic bag later found to contain marijuana.

Williams' second vagueness claim is that a person cannot tell when he or she will reach the prohibited levels of marijuana. In *Slinkard v. State,* we considered and rejected this same argument with regard to the alcohol per se statute.[37] We determined that a person of average intelligence could reason that consumption of a substantial quantity of alcohol could result in the proscribed level and held that this sufficed to satisfy the notice requirement.[38] In the context of this case, the argument is even weaker because unlike alcohol—which may be legally possessed and consumed— it is unlawful to use or possess marijuana in any amount.[39] Williams was given adequate notice that she was not permitted to legally possess or use marijuana, yet she chose to do both and then drive a vehicle. Further, the statute provides adequate notice that it is unlawful to drive with clearly defined levels of marijuana or marijuana metabolite in the bloodstream.

### 4. Overbreadth

Williams' last constitutional challenge is that NRS 484.379(3) fails to recognize the lawful use of the parts of the marijuana plant that are excluded from the definition of marijuana under NRS 453.096(2). Williams argues that this impermissibly punishes the use of all marijuana and that since it captures legal conduct, the statute is overbroad. She also argues that marijuana is not precisely defined in NRS 484.3795.

---

[36]*See Random House Webster's College Dictionary* 823 (2d ed. 1996).

[37]106 Nev. 393, 395, 793 P.2d 1330, 1331 (1990).

[38]*Id.*

[39]NRS 453.336 (possession of a controlled substance); NRS 453.411 (being under the influence of a controlled substance).

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights."[40] An overbreadth challenge may only be made if a statute infringes upon constitutionally protected conduct.[41] Absent such infringement, an overbreadth challenge must fail.[42]

We have already determined that the statute being challenged by Williams does not affect constitutionally protected conduct. Therefore, Williams' overbreadth argument is without merit.

## B. Double jeopardy

Next, Williams argues that her conviction under the prohibited substance theory violates the Double Jeopardy Clause.[43] Specifically, she claims that since she was charged under two subsections of NRS 484.3795(1), and the district court treated the alternative theories as separate offenses by asking the jury to return verdicts as to each theory, that acquittal under the first theory precluded conviction under the second theory.

" '[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.' "[44]

To determine whether a single act which allegedly violates two statutory provisions constitutes a single offense for purposes of double jeopardy analysis, we recently reiterated that the test set forth in *Blockburger v. United States*[45] is the appropriate tool.[46] Under this test, "if the elements of one offense are entirely included within the elements of a second offense, the first offense is a lesser included offense and the Double Jeopardy Clause prohibits a conviction for both offenses."[47] Here, NRS 484.3795(1)(d) makes it unlawful to drive or be in actual physical control of a vehicle while "under the influence of a controlled substance." NRS 484.3795(1)(f) prohibits a person from driving

---

[40]*Chicago v. Morales,* 527 U.S. 41, 52 (1999) (plurality opinion).

[41]*Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494 (1982).

[42]*Id.*

[43]U.S. Const. amend. V.

[44]*Gordon v. District Court,* 112 Nev. 216, 220, 913 P.2d 240, 243 (1996) (quoting *United States v. Halper,* 490 U.S. 435, 440 (1989), *abrogated on other grounds by Hudson v. United States,* 522 U.S. 93 (1997)).

[45]284 U.S. 299 (1932).

[46]*Barton v. State,* 117 Nev. 686, 692, 30 P.3d 1103, 1107 (2001).

[47]*Id.*

or being in actual physical control of a vehicle while having a prohibited substance in his or her blood in excess of the amount set forth in NRS 484.379(3). Impairment is not necessary for a conviction under NRS 484.3795(1)(f); and, unlike NRS 484.3795(1)(f), no specific level of a prohibited substance must be found in order to convict a person under NRS 484.3795(1)(d). In addition, we previously recognized the existence of a per se violation, in the alcohol context, and stated that "[t]his violation exists completely apart from a violation based on being under the influence of intoxicating liquor or a controlled substance."[48] Under the *Blockburger* test, each of these subsections defines a separate offense for purposes of double jeopardy analysis.

We previously concluded that multiple convictions under separate DUI theories are impermissibly redundant.[49] In *Dossey v. State*,[50] the driver was charged and convicted of three counts of driving while intoxicated, each brought under a different subsection of NRS 484.379(1). We concluded "that the [L]egislature intended the subsections of [the DUI] statute to define alternative means of committing a single offense, not separable offenses permitting a conviction of multiple counts based on a single act."[51] Accordingly, using the redundant conviction analysis, we vacated the conviction on two of the counts as redundant but affirmed the conviction and sentence as to the third count.

Under NRS 173.075(2), alternative means of committing a crime may be alleged within a single count. We previously have held that although a charging document may set forth alternative means of committing an offense within a single count, alternative offenses must be charged in separate counts.[52] Further, setting forth alternative and distinct theories of prosecution in one count

---

[48]*Long v. State,* 109 Nev. 523, 530, 853 P.2d 112, 116 (1993); *see also State v. Dow,* 806 P.2d 402, 405-07 (Haw. 1991) (holding that Hawaii's DUI statute "provides two alternative means of proving a single offense" and that trying a defendant on a per se DUI theory, after she had been "acquitted" of the impairment theory, did not constitute double jeopardy because "acquittal" on one theory was not fatal to completely separate theory); *State v. Abbott,* 514 P.2d 355 (Or. Ct. App. 1973) (holding that there was no prohibition against convicting a defendant of a per se violation while simultaneously acquitting a defendant of driving under the influence); *State v. Superior Court of Pima County,* 721 P.2d 676 (Ariz. Ct. App. 1986) (explaining that per se violation and driving under the influence involve different factual elements).

[49]*Dossey v. State,* 114 Nev. 904, 964 P.2d 782 (1998); *see also Albitre v. State,* 103 Nev. 281, 283, 738 P.2d 1307, 1309 (1987) (holding that "redundant convictions that do not comport with legislative intent" should be stricken).

[50]114 Nev. at 904, 964 P.2d at 782.

[51]*Id.* at 909, 964 P.2d at 785.

[52]*Jenkins v. District Court,* 109 Nev. 337, 339-40, 849 P.2d 1055, 1057 (1993).

does not fail to give the defendant adequate notice of the charges against him.[53] Based on our decision in *Dossey,* the State properly alleged alternative theories in one count. The purpose of NRS 173.075 is clearly to ensure that the defendant is given proper notice of the charges he is faced with so as to adequately defend against them. The record here indicates that Williams was clearly on notice as to the charges she faced.

We conclude that NRS 484.3795(1)(d) and (f) constitute alternative means of committing an offense and that appellant's acquittal under the one subsection and her conviction under the other does not violate the Double Jeopardy Clause. Further, we conclude that Williams' argument also lacks merit because she has been subjected to only one prosecution and one punishment for each DUI charge.

## C.  *Proximate cause*

Williams claims that the trial court erred in excluding evidence of the county's purported negligence because that decision improperly shifted the burden of proof to the defense on the issue of proximate cause. We disagree.

The State's motion in limine to exclude this evidence was granted on the basis that any purported negligence by a third party would not exculpate Williams if she was found to be a proximate cause of the deaths. Proximate cause was defined in Jury Instruction No. 15, which stated:

> ''Proximate Cause'' is that cause which is natural and a continuous sequence, unbroken by any other intervening causes, that produces the injury and without which the injury would not have occurred.
>
> A proximate cause of an injury can be said to be that which necessarily sets in operation the factors that accomplish the injury.
>
> The contributory negligence of another does not exonerate the defendant unless the other's negligence was the sole cause of injury.

We have previously held that a similar instruction ''was an accurate statement of Nevada law'' because an intervening cause must be a ''superseding cause'' or the ''sole cause'' in order to completely excuse the prior act.[54] We conclude that the instruction given in this case was also proper.

---

[53]*Sheriff v. Aesoph,* 100 Nev. 477, 478, 686 P.2d 237, 238 (1984).

[54]*Etcheverry v. State,* 107 Nev. 782, 785, 821 P.2d 350, 351 (1991).

Further, we conclude that the district court did not abuse its discretion by excluding the evidence as irrelevant.[55] Our point is illustrated by a California case involving similar facts. In *People v. Autry*,[56] the California Court of Appeals considered the question of whether alleged negligence by a construction company in placing work crews in the median without the required attenuator truck behind the workers to absorb any collisions and prevent injuries to the workers relieved a defendant of criminal liability. There, as in this case, the defendant was charged with driving under the influence and second-degree murder based on the deaths that resulted from the collision with the workers.[57] The court found as a matter of law that the construction company's alleged negligence was a preexisting condition and therefore could not be an intervening or superceding cause.[58] The court reasoned that "[i]n the normal meaning of the words, . . . an 'intervening' or 'superseding' cause which relieves the criminal actor of responsibility is one which 'breaks the chain of causation' *after* the defendant's *original* act."[59]

Likewise, in the present case, the county's placement of the teenagers in the median was a preexisting condition to Williams' act of veering off the road and colliding with the teenagers in the median. The district court thus properly held that any purported negligence would not exonerate Williams and properly rejected the evidence as irrelevant.

We conclude that the district court properly exercised its discretion in concluding that evidence of the county's purported negligence was irrelevant because such negligence could not exculpate Williams. This decision did not shift the burden of proof because the State was still required to prove beyond a reasonable doubt that Williams was the proximate cause of the resulting deaths.

## D. *Destruction of evidence*

Williams next contends that her conviction should be vacated because the State failed to preserve her blood sample. Williams raised this argument in a motion to suppress the blood evidence

---

[55]NRS 48.025 provides that only relevant evidence is admissible. The determination of whether evidence is relevant lies within the sound discretion of the trial judge. *Atkins v. State,* 112 Nev. 1122, 1127, 923 P.2d 1119, 1123 (1996). That decision will not be disturbed on appeal "absent a clear abuse of that discretion." *Id.*

[56]43 Cal. Rptr. 2d 135, 137 (Ct. App. 1995).

[57]*Id.* at 136.

[58]*Id.* at 140.

[59]*Id.*

and also claims that the district court committed plain error in refusing to conduct a suppression hearing until the close of trial.

### 1.   *Suppression of evidence*

In *Arizona v. Youngblood,*[60] the United States Supreme Court held that the State's failure to preserve evidence does not warrant dismissal unless the defendant can show bad faith by the government and prejudice from the loss of the loss of the evidence.[61] We have reached a similar conclusion:

> [T]he State's loss or destruction of evidence constitutes a due process violation only if the defendant shows either that the State acted in bad faith or that the defendant suffered undue prejudice and the exculpatory value of the evidence was apparent before it was lost or destroyed. Where there is no bad faith, the defendant has the burden of showing prejudice. The defendant must show that " 'it could be reasonably anticipated that the evidence sought would be exculpatory and material to [the] defense.' " It is not sufficient to show " 'merely a hoped-for conclusion' " or " 'that examination of the evidence would be helpful in preparing [a] defense.' "[62]

Additionally, in *State v. Hall,* we held that a lab's routine destruction of a DUI defendant's blood sample, after a year, did not constitute bad faith.[63]

Here, the blood evidence was not lost or destroyed by the State. Instead, without the State's knowledge, the blood sample was stored by an independent lab (APL) in an unrefrigerated location–according to the lab's normal procedures. Williams did not request a retest of her blood sample for over ten months after it was drawn. Upon request, the State stipulated to allow the retest and there is no evidence that the State delayed the request in any way.

The district court concluded that Williams had failed to show that the State acted in bad faith or that the exculpatory value of the blood samples was apparent or material to her defense at the time that it was stored at room temperature. Nevada case law, as clearly articulated in *Leonard v. State,*[64] supports this conclu-

---

[60]488 U.S. 51 (1988).

[61]*Id.* at 57-58.

[62]*Leonard v. State,* 117 Nev. 53, 68, 17 P.3d 397, 407 (2001) (citations omitted).

[63]105 Nev. 7, 9, 768 P.2d 349, 350 (1989).

[64]117 Nev. 53, 17 P.3d 397.

sion. Williams has failed to demonstrate how this decision was erroneous.

Accordingly, we conclude that the district court properly determined that Williams failed to show the non-refrigeration constituted a due process violation. We also concur with the district court's decision to allow the jury to consider all of the evidence relating to the original test, the retest, the delay in retesting, and the lack of refrigeration. The jury was free to weigh the evidence as it deemed appropriate.

## 2. *Delay in suppression hearing*

Williams claims that the trial court's refusal to conduct an evidentiary hearing on her motion to suppress the blood evidence until after the close of trial was plain error.

The fact that Williams' blood samples had not been refrigerated did not become known until near the end of the presentation of evidence phase, when Williams sought to introduce the retest results and the testimony of an expert witness not previously disclosed to the State. The State had introduced the blood evidence and the lab analyst's testimony, without objection, six days before this information became known. When this new information arose, the district court recognized that this information was new to all parties and considered the motion to suppress but denied it, without prejudice, on the basis that given the stage of the proceedings, it was not timely.

The district court allowed counsel on both sides to examine the expert offered by Williams outside the presence of the jury. After hearing the testimony, the district court ruled that it would allow both sides ample time to examine the witness in the presence of the jury and would allow both sides to elicit testimony as to how the blood evidence would have been affected by the delay in retesting and by having been stored at room temperature. The district court also advised the parties that if the motion to suppress was renewed post-trial, an evidentiary hearing would then be conducted.

NRS 174.125(1) provides that motions to suppress evidence must be made before trial, unless the moving party was unaware of the grounds for the motion before trial. NRS 174.125(3)(a) requires that motions to suppress "must be made in writing not less than 15 days before the date set for trial" except in certain circumstances not present in this case. NRS 174.125(3)(b) allows the district court to permit the motion to be filed at a later date "if a defendant waives hearing on the motion or for other good cause shown."

Here, Williams was unaware of the grounds for filing the motion before trial. The district court could have thus considered

the motion during trial under NRS 174.125(3)(b). However, the terms in the statute are discretionary and the decision to consider the motion was therefore within the discretion of the district court. The district court considered the motion but refused to stop the proceedings in order to immediately conduct an evidentiary hearing. We conclude that this decision was within the district court's discretion.

### E.  *Other claims of error*

Williams further claims that the district court erred in admitting the testimony of the lab analyst who handled the blood sample, though Williams did not object or cross-examine the witness. In addition, Williams contends that the district court erred by prohibiting her attorney from talking about an unrelated case, in refusing a proffered jury instruction, and in admitting photographs of the victims taken at the scene of the collision. These arguments were fully briefed. We have considered them and conclude that they too lack merit.

Accordingly, we order the judgment of conviction affirmed.

MAUPIN, C. J., YOUNG, SHEARING, AGOSTI, ROSE and BECKER, JJ., concur.