**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JESSICA WILLIAMS,
            *Petitioner-Appellant,*

v.

WARDEN, for the State of Nevada
Women's Correctional Facility,
Christine Bodo, et al.,
            *Respondent-Appellee.*

No. 04-15465

D.C. No.
CV-03-0874-PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted
February 15, 2005—San Francisco, California

Filed September 7, 2005

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge D. W. Nelson

12579

**COUNSEL**

John G. Watkins (argued) and Ellen J. Bezian (on the briefs), Las Vegas, Nevada, for the petitioner-appellant.

Brian Sandoval, Attorney General of the State of Nevada, and Victor-Hugo Schulze, II (argued), Deputy Attorney General for the State of Nevada, Las Vegas, Nevada, for the respondent-appellee.

**OPINION**

D. W. NELSON, Circuit Judge:

Jessica Williams appeals the district court's denial of her habeas corpus petition. The district court concluded that the Nevada Supreme Court's rejection of Williams' double jeopardy claim neither contravened nor unreasonably applied clearly established federal law, as determined by the United States Supreme Court. At issue in this appeal is Williams' asserted simultaneous conviction and acquittal, under two separate theories, for violating the single offense of "Driving Under the Influence of Intoxicating Liquor or Controlled or Prohibited Substance" ("DUI"), pursuant to Nev. Rev. Stat. § 484.3795(1) (hereinafter NRS 484.3795(1)). Williams argues that because she was charged under two subsections of the statute and the trial court treated the alternate bases of criminal liability as separate offenses by having the jury return verdicts on each theory, her acquittal under one theory barred conviction under the other. We find this argument without merit and affirm the district court's denial of the petition.

## I.   Factual and Procedural Background

On March 19, 2000, Williams' van veered off the road and onto a highway median, killing six teenagers who had been assigned to a road cleanup crew by Clark County Juvenile Services. Williams, who was twenty years old at the time, testified that she had been up all night prior to the tragic incident. She admitted that she had smoked marijuana about two hours before the accident and that she had used the drug "ecstasy" the previous evening. Williams' car drifted onto the median after she had apparently fallen asleep at the wheel. At the time of the accident, Williams had a pipe with marijuana residue and a plastic bag with marijuana in her car. Blood tests confirmed the presence of marijuana metabolites in her system.

Williams was charged, *inter alia*, with six counts of violating NRS 484.3795(1) for driving under the influence of a controlled substance and proximately causing the deaths of six persons. The six counts charged her under two subsections of NRS 484.3795(1). Under subsection (1)(d), in order to convict Williams, the jury needed to find her "under the influence of a controlled substance . . . ." NRS 484.3795(1)(d). Under subsection (1)(f), which creates a per se violation of the statute, in order to convict, the jury needed to find that Williams had "a prohibited substance in [her] blood or urine in an amount equal to or greater than" the statutory threshold. NRS 484.3795(1)(f). The jury convicted Williams on all six counts under the per se theory.

The verdict forms were organized by victim and provided for a verdict on each of the charged alternative bases for criminal liability. Specifically, the state district court used a dual-verdict form, which provided boxes for the jury to check corresponding to guilty and not guilty verdicts for each theory of the crime. Thus, on each of the six DUI counts, the jury rendered a verdict for each theory of culpability. The jury found Williams guilty of violating NRS 484.3795(1) as to each of the victims under the per se theory of subsection (1)(f) and not guilty as to each of the victims under the "under the influence" theory (hereinafter "impairment theory") of subsection(1)(d).

After exhausting her appeals in state court, Williams filed a petition for habeas corpus in federal district court, claiming that her convictions violated the Fifth Amendment's Double Jeopardy Clause. *See* U.S. Const. amend. V. The district court denied her petition, and Williams timely filed this appeal.

## II.    Standard of Review

This court reviews the district court's denial of a 28 U.S.C. § 2254 habeas petition de novo. *Insyxiengmay v. Morgan,* 403 F.3d 657, 665 (9th Cir. 2005). Under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition stemming from a state court conviction will not be granted unless the decision is "contrary to" or "an unreasonable application of" established Supreme Court precedent. 28 U.S.C. § 2254(d).[1] The federal court must look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

## III.   Discussion

### A.   The Nevada Supreme Court's Construction of the Statute of Conviction

The Nevada Supreme Court concluded that the DUI statute under which Williams was charged defines alternative means of committing a single offense and not separate offenses. *Williams v. Nevada*, 50 P.3d 1116, 1125 (Nev. 2002) ("We conclude that NRS 484.3795(1)(d) and (f) constitute alternative means of committing an offense . . . ." ).[2] While the court made a legal determination that the two subsections define alternate bases of a single form of criminal liability, it also made a factual determination that Williams was acquitted under one subsection of the statute and convicted under another because, as Williams argued to the Nevada Supreme Court, "the [state] district court treated the alternative theories as separate offenses by asking the jury to return verdicts as to each theory . . . ." *Id*. at 1124; *see also id*. at 1119 ("Williams was convicted by a jury of six counts of driving with a prohibited substance in the blood or urine . . . . The jury returned not

---

[1]AEDPA applies in this case because Williams filed her petition after the effective date of the act.

[2]The Nevada Supreme Court similarly concluded in another case involving a related DUI statute " 'that the [L]egislature intended the subsections of [the DUI] statute to define alternative means of committing a single offense, not separable offenses permitting a conviction of multiple counts based on a single act.' " *Williams*, 50 P.3d at 1125 (alterations in original) (quoting *Dossey v. State*, 964 P.2d 782, 785 (Nev. 1998)).

guilty verdicts on the six counts of driving while under the influence . . . .").

We note that it would have been perfectly reasonable for the Nevada Supreme Court simply to read the "acquittals" on the impairment theory of DUI from the alternative verdict forms as either themselves special verdicts or as answers to a general verdict form with interrogatories. *Cf.* Nev. R. Civ. P. 49 (explaining the propriety of the use of special verdicts and general verdicts accompanied by answers to interrogatories in the context of civil trials); *see also Zhang v. Am. Gem Seafoods, Inc.* 339 F.3d 1020, 1031 (9th Cir. 2003) (explaining that "[i]f the jury announces only its ultimate conclusions, it returns an ordinary general verdict; if it makes factual findings in addition to the ultimate legal conclusions, it returns a general verdict with interrogatories. If it returns only factual findings, leaving the court to determine the ultimate legal result, it returns a special verdict."). Read this way, the forms simply ask the jury to explain which theory of culpability underlies its single verdict. Under such a reading, there would be no cognizable double jeopardy violation because there would be only one finding of guilt or innocence.[3] Williams concedes as much.

We may not, however, substitute our judgment that the alternative verdict forms are better viewed as akin to special verdict forms or a general verdict form requesting answers to

---

[3]*Williams* cites a Hawaii Supreme Court case for its holding that a DUI statute specifying both a per se theory and an impairment theory of criminal liability for DUI "provides two alternative means of proving a single offense." 50 P.3d at 1124 n.48 (quoting *State v. Dow*, 806 P.2d 402, 405 (Haw. 1991)). In that case, the Hawaii Supreme Court treated the trial court's prior "acquittal" on the impairment *theory* alone as a factual finding akin to a jury's special verdict. *Dow*, 806 P.2d at 406. The Hawaii Supreme Court thus did not consider the trial court's entry of judgment of acquittal on that theory as a jeopardy terminating event and held that the defendant's subsequent conviction for the *offense* under a per se theory of DUI did not constitute double jeopardy. *Id*. at 406-07.

interrogatories. How to view these forms is a question of fact for the state courts to resolve in the first instance. Under AEDPA, this court owes a state court's findings of fact great deference. 28 U.S.C. § 2254(e)(1). We must presume the correctness of the state court's factual findings absent clear and convincing evidence to the contrary. *Id.*; *see also Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (applying the standards of 28 U.S.C. § 2254). We thus proceed, as the Nevada Supreme Court did, under the assumption that Williams was *convicted* under NRS 484.3795(1)(f) (the per se subsection) and *acquitted* under NRS 484.3795(1)(d) (the impairment subsection) for purposes of our analysis of the double jeopardy question. *See Williams*, 50 P.3d at 1125 ("We conclude that . . . appellant's *acquittal* under the one subsection and her *conviction* under the other does not violate the Double Jeopardy Clause.") (emphasis added).

The Nevada Supreme Court indicated that even if the two subsections had created two offenses under Nevada law, there would still be no double jeopardy violation. The court explained that "[u]nder the *Blockburger* test, each of these subsections defines a separate offense for purposes of double jeopardy analysis." *Id.* at 1124 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one [for double jeopardy purposes] is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304. With its application of *Blockburger*, the Nevada Supreme Court made clear that even if the two subsections of Nevada's DUI statute are treated as creating facially distinct offenses, they are separate offenses for double jeopardy purposes because they fail *Blockburger*'s "same evidence" test. *See Sanabria v. United States*, 437 U.S. 54, 70 n.24 (1978) (characterizing the *Blockburger* test as the "same evidence" test).

Williams thus faces the following dilemma. Either the two subsections create two distinct offenses under Nevada law or

they do not. If the two subsections create two offenses, then there is no double jeopardy violation because the two offenses fail the same evidence test of *Blockburger* and thus are not the same offense for purposes of double jeopardy. *See Williams*, 50 P.3d at 1124. If, on the other hand, the trial court mistakenly allowed, whether wittingly or not, Williams to be simultaneously acquitted and convicted of the same offense under two subsections of the statute, then, as we explain *infra*, there is still no double jeopardy violation. Either way, Williams' double jeopardy challenge fails. Because the Nevada Supreme Court specifically held that the two subsections of the DUI statute do not create separate offenses, we turn our attention away from the court's *Blockburger* analysis to the second horn of the dilemma.

We pause to note, however, that even if, as Williams claims, the Nevada Supreme Court erred in finding that *Blockburger* was "the appropriate tool" for its double jeopardy analysis, *Williams*, 50 P.3d at 1124, this error would not be enough to grant her habeas petition. The application of federal law must be "objectively unreasonable," not just "incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). And it is the state court's decision, not its reasoning, that is judged under the "unreasonable application" standard. *See, e.g.*, *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (observing that in habeas proceedings, "we are determining the reasonableness of the state courts' 'decision,' not grading their papers") (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001)); *id.* ("the intricacies of the state court's analysis need not concern us; what matters is whether the *decision* the court reached was contrary to controlling federal law"). Because the Nevada Supreme Court reached the correct result on other grounds that neither contravened nor unreasonably applied established federal law, this court, under AEDPA, must uphold the Nevada Supreme Court's decision.

*B. Williams' Reliance on Supreme Court Precedent in Defining the Scope of Double Jeopardy's Protections*

**[1]** The Nevada Supreme Court correctly relied upon *United States v. Halper*, 490 U.S. 435, 440 (1989), *abrogated on other grounds by Hudson v. United States*, 522 U.S. 93, 96 (1997), when it noted, "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Williams*, 50 P.3d at 1124 (internal citation and quotation marks omitted). Williams would like to carve out a fourth abuse against which double jeopardy ostensibly protects: the simultaneous conviction and acquittal of the same offense, under different theories, in the same trial by a single jury. Such an extension would not comport with the primary purpose of the Double Jeopardy Clause. *See Green v. United States*, 355 U.S. 184, 187 (1957) ("The underlying idea [behind the constitutional prohibition against double jeopardy] . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . .").

**[2]** Furthermore, because the acquittal took place at the same time as the conviction, Williams never had a legitimate expectation of finality in the verdict of acquittal. *See United States v. DiFrancesco*, 449 U.S. 117, 129 (1980) ("An acquittal is accorded special weight. The constitutional protection against double jeopardy unequivocally prohibits a *second trial* following an acquittal, for the public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be *retried* even though the acquittal was based upon an egregiously erroneous foundation.") (emphasis added) (internal quotation marks omitted) (citing *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)).

Williams relies heavily on *Sanabria* for the proposition that a single offense cannot be divided into "discrete bases of liability" under different theories and counted as separate offenses for purposes of double jeopardy. *See Sanabria*, 437 U.S. at 72. Williams claims that the Nevada Supreme Court has done what *Sanabria* has expressly forbidden by treating NRS 484.3795 subsections (1)(d) and (1)(f) as separate offenses for purposes of its double jeopardy analysis.

The *Sanabria* Court held that Sanabria's acquittal of the charge of being connected with an illegal gambling business on one theory "stands as an absolute bar to any *further* prosecution for participation in that business" on any other theory. *Sanabria*, 437 U.S. at 72-3 (emphasis added). *Sanabria* thus protects Williams from further prosecution on the same offense under a different theory, but it does not apply in this case, where the two theories of culpability were presented to the same jury simultaneously.

**[3]** Williams also claims that the protections of collateral estoppel embodied in the Double Jeopardy Clause demand that her "acquittals" under subsection (1)(d) prevent the government from "relitigating . . . a second time under an alternative theory." *See Ashe v. Swenson*, 397 U.S. 436, 445 (1970) (holding that collateral estoppel is part of the Fifth Amendment's guarantee against double jeopardy). Williams is correct. This is in fact what *Sanabria* proscribes. *See* 437 U.S. at 69. But that is not what happened here. There was one trial at which the jury rendered its verdicts simultaneously. The government litigated the case once — not twice — under alternative theories, as is its right. *See Schad v. Arizona*, 501 U.S. 624, 631 (1991) ("It may be alleged in a single count that . . . the defendant committed the offense . . . by one or more specified means.") (internal citation and quotations omitted). Williams' simultaneous acquittals and convictions thus did not violate the principle of collateral estoppel embodied in the Double Jeopardy Clause. *See Ashe*, 397 U.S. at 442 (defining collateral estoppel as "the principle that bars *relitigation*

between the same parties of issues actually determined at a *previous* trial") (emphasis added).

Williams does not provide any authority for the proposition that a simultaneous conviction and acquittal on the self-same offense violates the Double Jeopardy Clause. United States Supreme Court precedent in fact supports the opposite contention. In *Green*, the Court held that Green's conviction on the lesser included offense of second degree murder constituted an "implicit acquittal" of the greater murder charge. *Green*, 355 U.S. at 190 & n.10. The Court held that for double jeopardy purposes the jury should be understood to have "returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.' " *Id*. at 191. In so doing, the Court sanctioned a simultaneous acquittal and conviction on the "same offense." *See Brown v. Ohio*, 432 U.S. 161, 166 & n.6 (1977) (holding that greater and lesser included offenses were the "same offense" for purposes of double jeopardy).

**[4]** The Nevada Supreme Court neither contravened nor unreasonably applied established federal law when it refused to expand the protections of double jeopardy to Williams' case. Moreover, doing so would have thwarted the obvious intent of the jury, and "no possible unfairness can be found in a judgment that reflects the jury's true intent." *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990) (holding that the trial court's correction of verdict from acquittal to guilty in order to correct a clerical error made by the jury did not violate Double Jeopardy Clause).

## IV.   Conclusion

Because the Nevada Supreme Court's decision was consistent with clearly established federal law in holding that Williams has not twice been put in jeopardy for the same offense, we affirm the district court's denial of Williams' petition for habeas corpus.

**AFFIRMED.**