THE STATE OF NEVADA, Appellant, *v.* JESSICA WILLIAMS, Respondent.

No. 41109

July 22, 2004                                           93 P.3d 1258

---

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Gary R. Booker* and *Bruce W. Nelson,* Deputy District Attorneys, Clark County, for Appellant.

*Law Office of Ellen J. Bezian* and *Ellen J. Bezian,* Las Vegas; *Law Offices of John G. Watkins* and *John Glenn Watkins,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

The State of Nevada appeals from the district court's grant of a post-conviction petition for a writ of habeas corpus to respondent Jessica Williams. The State argued that Williams' petition was procedurally barred since Williams' claim that marijuana metabolite, carboxylic acid, is not a prohibited substance pursuant to NRS 484.379 should have been raised at trial or on direct appeal.

We agree and conclude that the district court erroneously granted Williams' petition. Williams did not establish good cause for failing to raise the claim at trial or on direct appeal. Additionally, Williams was unable to establish actual prejudice because the plain language of NRS 484.379 clearly includes marijuana metabolite as a prohibited substance.

## FACTS

A grand jury indicted Jessica Williams on six counts each of driving and/or being in actual physical control of a vehicle while under the influence of a controlled substance and/or with a prohibited substance (marijuana and marijuana metabolite) in the blood or urine, reckless driving, and involuntary manslaughter. In addition, Williams was indicted on one count each of using or being under the influence of a controlled substance (marijuana and ecstasy), possession of a controlled substance (marijuana), and possession of drug paraphernalia.

Williams was tried, and the jury found her guilty of six counts of driving a vehicle with a prohibited substance in her blood or urine; one count for each of the six deaths that resulted from her conduct. Williams was also convicted of the single counts of unlawfully using a controlled substance and possession of a controlled substance. The jury acquitted Williams of the remaining charges.

On direct appeal, Williams raised several assignments of error regarding the validity of her conviction and the statute under which she was convicted. Discerning no error, we affirmed Williams' judgment of conviction.[2]

Williams timely filed a post-conviction petition for writ of habeas corpus in the district court. Williams alleged that her conviction for driving a vehicle with a prohibited substance in her blood or urine was unconstitutional on the ground that one of the theories presented to the jury was improper; namely, that she was

[2]*Williams v. State,* 118 Nev. 536, 554, 50 P.3d 1116, 1127 (2002).

driving with marijuana metabolite in her blood. Williams alleged that the theory was improper because marijuana metabolite, carboxylic acid, is not a prohibited substance under NRS 484.1245. She maintained that under the plain language of NRS 484.1245, in order for carboxylic acid to be a prohibited substance, a prescription must not be issued for its use and it must be classified as a schedule I or II controlled substance pursuant to NRS 453.166 or 453.176. Williams argued that since carboxylic acid is not listed in schedule I or II, it is not a prohibited substance. Therefore, Williams contended that since the jury returned a general verdict of guilty, and it was impossible to determine which theory was used as the basis of her conviction—marijuana or marijuana metabolite—her conviction must be reversed as to those counts.

The State responded that Williams' petition was procedurally barred and should be dismissed pursuant to NRS 34.810. The State further maintained that even if the petition was properly before the district court, it should still be denied because, among other reasons, both NRS 484.1245 and 484.379 specifically provide that it is unlawful to drive with marijuana metabolite in the blood.

The district court conducted an evidentiary hearing, agreed with Williams, and granted her petition. The district court concluded that since carboxylic acid is not listed in schedule I or II, it is not a prohibited substance under NRS 484.1245 or 484.379(3). Accordingly, it was unconstitutional for the State to prosecute Williams for driving a vehicle with marijuana metabolite in her blood or urine. Because Williams was prosecuted on alternative theories under the prohibited substance statute based on marijuana or marijuana metabolite, and the jury returned general verdicts of guilty, it was unknown which theory served as the basis for her conviction. Thus, the district court ordered that Williams' convictions for driving a vehicle with a prohibited substance in the blood or urine be reversed. Implicit in the district court's ruling appears to have been the conclusion that Williams had established a showing of prejudice sufficient to overcome the procedural bar. The State timely filed a notice of appeal.

## DISCUSSION

The State argues that Williams' petition was procedurally barred by NRS 34.810. The State maintains that Williams' claim that marijuana metabolite is not a prohibited substance is a new claim that she could have raised at trial or on direct appeal.

NRS 34.810 establishes a procedural bar for new post-conviction claims that could have been raised previously. NRS 34.810(1)(b) provides:

1. The court shall dismiss a petition if the court determines that:

. . . .

(b) The petitioner's conviction was the result of a trial and the grounds for the petition could have been:

(1) Presented to the trial court;

(2) Raised in a direct appeal or a prior petition for a writ of habeas corpus or postconviction relief; or

(3) Raised in any other proceeding that the petitioner has taken to secure relief from his conviction and sentence

. . . .

Based on the ''shall dismiss'' language contained in subsection 1 above, we have noted that application of the procedural bar pursuant to NRS 34.810 is mandatory.[3] However, according to NRS 34.810(1)(b), if the district court finds both cause for the failure to present the grounds and actual prejudice to the petitioner, the district court may consider a petition that is otherwise procedurally barred. Under NRS 34.810(3), the petitioner has the burden of pleading and proving specific facts to demonstrate good cause for the failure to present the claim and actual prejudice.

In the instant case, Williams' claim that marijuana metabolite is not a prohibited substance was not raised in the prior proceedings and is a new claim. Thus, absent a showing of cause and prejudice, Williams' claim was procedurally barred pursuant to NRS 34.810.

To establish good cause for failure to raise a claim in an earlier proceeding, a petitioner must demonstrate that an impediment external to the defense prevented her from raising her claims earlier.[4] ''For example, such an impediment might be demonstrated by a showing that the factual or legal basis for a claim was not reasonably available . . . or that some interference by officials made compliance [with the procedural rule] impracticable.''[5] ''Actual prejudice requires a showing not merely that the errors [complained of] created a possibility of prejudice, but that they worked to [the petitioner's] actual and substantial disadvantage, in affecting the state proceeding with error of constitutional dimensions.''[6]

---

[3]*State v. Haberstroh,* 119 Nev. 173, 180, 69 P.3d 676, 681 (2003).

[4]*Hathaway v. State,* 119 Nev. 248, 252, 71 P.3d 503, 506 (2003); *Pellegrini v. State,* 117 Nev. 860, 886, 34 P.3d 519, 537 (2001).

[5]*Pellegrini,* 117 Nev. at 886-87, 34 P.3d at 537 (internal quotation marks omitted).

[6]*Id.* at 887, 34 P.3d at 537 (internal quotation marks omitted).

We conclude that there is no merit to Williams' allegation of good cause. Williams' assertion that she could not have raised this claim previously because it was indiscernible due to its highly complex, esoteric, and scientific nature does not establish cause. She presented no specific evidence to demonstrate or explain why this issue could not have been raised either at trial or on direct appeal.

Additionally, we conclude that Williams failed to establish actual prejudice sufficient to overcome the procedural bar of NRS 34.810, since marijuana metabolite is a prohibited substance under NRS 484.379 and 484.1245. NRS 484.379 makes it unlawful for a person to drive under the influence of a prohibited substance. NRS 484.379(3) states that ''[i]t is unlawful for any person to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access with an amount of a prohibited substance in his blood or urine that is equal to or greater than'' specified amounts of ten listed substances. This subsection then lists ten substances that are prohibited and the amount of each substance when found in the blood or urine that constitutes a violation of the statute. Specifically, NRS 484.379(3)(h) states:

| Prohibited substance | Urine Nanograms per milliliter | Blood Nanograms per milliliter |
|---|---|---|
| . . . | | |
| (h) Marijuana metabolite | 15 | 5 |

Thus, the plain language of NRS 484.379 clearly lists marijuana metabolite as a prohibited substance and gives the amount in nanograms per milliliter that must be present in the blood or urine to constitute a violation of the statute.

NRS 484.3795 is part of the same statutory scheme and provides for a penalty enhancement for driving under the influence of a prohibited substance when death or substantial bodily harm results. NRS 484.3795(1)(f) provides:

> 1. A person who:
>
> . . .
>
> (f) Has a prohibited substance in his blood or urine in an amount that is equal to or greater than the amount set forth in subsection 3 of NRS 484.379,
>
> and does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, a person other than himself, is guilty of a category B felony and

shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 20 years and must be further punished by a fine of not less than $2,000 nor more than $5,000.

This provision incorporates by reference NRS 484.379, which specifically lists marijuana metabolite as a prohibited substance. Thus, the enhanced penalties of NRS 484.3795 apply to any person who has a proscribed amount of marijuana metabolite in her blood or urine under NRS 484.379.

Despite the fact that marijuana metabolite is a prohibited substance under these statutory provisions, Williams claims that marijuana metabolite is not a prohibited substance. Williams bases her argument on another statutory provision, NRS 484.1245.

NRS 484.1245 is also part of the same statutory scheme as NRS 484.379 and 484.3795, and it defines "prohibited substance." NRS 484.1245 reads as follows:

"Prohibited substance" means any of the following substances if the person who uses the substance has not been issued a valid prescription to use the substance and the substance is classified in schedule I or II pursuant to NRS 453.166 or 453.176 when it is used:

1. Amphetamine.
2. Cocaine or cocaine metabolite.
3. Heroin or heroin metabolite (morphine or 6-monoacetyl morphine).
4. Lysergic acid diethylamide.
5. Marijuana or marijuana metabolite.
6. Methamphetamine.
7. Phencyclidine.

Marijuana metabolite is listed as a prohibited substance at item five. However, according to the statute, the listed substances become prohibited substances if also classified in schedule I or II pursuant to NRS 453.166 or 453.176.

Pursuant to NRS 453.166 and 453.176, the Pharmacy Board is authorized to schedule substances. Delineating the qualifications for a drug classified in schedule I, NRS 453.166 authorizes the board to place a substance in schedule I if the board finds that the substance "1. [h]as high potential for abuse; and 2. [h]as no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." NRS 453.176 provides that the board is authorized to place a substance in schedule II if it finds "1. [t]he substance has high potential for abuse; 2. [t]he substance has accepted medical use in treatment in the United States, or accepted medical use with severe restrictions; and 3. [t]he abuse of the substance may lead to severe psychologi-

cal or physical dependence.'' Schedule I is codified at NAC 453.510, and schedule II is codified at NAC 453.520.

In this case, although marijuana is listed in schedule I, marijuana metabolite, carboxylic acid, is not listed in schedule I or II. While marijuana metabolite is not listed on either schedule, it is clear from the plain language of both NRS 484.379 and 484.1245 that marijuana metabolite is a prohibited substance.

Additionally, even if we agreed with Williams' position that the failure to list marijuana metabolite on the schedules creates an ambiguity as to whether marijuana metabolite is a prohibited substance under the statutory provision, she still would be unable to establish prejudice. NRS 484.1245, 484.379(3), and 484.3795(1)(f) are all additions to Chapter 484, arising from Senate Bill 481 during the 70th Session of the Nevada Legislature. The starting point for the Legislature in drafting the prohibited substance sections of NRS 484.1245 and 484.379(3) was a list of drugs contained and identified as ''controlled substances'' in NRS 484.385(5), governing license revocation. The list of drugs contained twenty-one substances, many of which were listed by their scientific names. Marijuana and marijuana metabolite were notably missing from this list.[7]

During a subsequent Senate Judiciary Committee meeting, it was noted that a determination had been made to list all controlled substances that are illegal to consume, with the specific addition of marijuana.[8] On April 9, 1999, a new list of controlled substances was presented to the committee.[9] It was noted that if any of the substances in the list were found in the system of a person operating a motor vehicle, it would be a per se violation.[10]

Eventually the Assembly Judiciary Committee considered the bill and heard testimony similar to that presented to the Senate.[11] The Assembly, responding to the expressed view that having a specific standard for measuring the substances listed would be more defensible than simply looking for ''detectable amounts'' of each substance, amended the list once again.[12] Cocaine metabolite, heroine metabolite, morphine, 6-monoacetyl morphine, and marijuana metabolite were added to the list because there was a standard for

[7]Hearing on S.B. 481 Before the Senate Comm. on Judiciary, 70th Leg. (Nev., April 2, 1999).

[8]Hearing on S.B. 481 Before the Senate Comm. on Judiciary, 70th Leg. (Nev., April 7, 1999).

[9]Hearing on S.B. 481 Before the Senate Comm. on Judiciary, 70th Leg. (Nev., April 9, 1999).

[10]*Id.*

[11]Hearing on S.B. 481 Before the Assembly Comm. on Judiciary, 70th Leg. (Nev., May 5, 1999).

[12]*Id.*

detecting these substances in the blood.[13] Mecloqualone and methaqualone, which were previously on the list, were stricken since there was no standard for detecting them in the blood.[14]

Thus, despite Williams' attempt to establish prejudice by statutory ambiguity, it is clear that in passing the prohibited substance statute, the Legislature intended to specifically list marijuana metabolite as a prohibited substance under NRS 484.1245 and 484.379(3), and to incorporate it by reference under NRS 484.3795(1)(f).

Finally, because Williams fails to show any error creating actual prejudice, we need not consider her claim on the basis that failure to do so would result in a fundamental miscarriage of justice.

Accordingly, we conclude that Williams failed to show good cause and actual prejudice to excuse the procedural bar to her post-conviction habeas petition or to show that a fundamental miscarriage of justice would occur from the failure to consider her claim for relief. Thus, we determine that the district court erred in granting Williams' post-conviction petition.

### CONCLUSION

We conclude that Williams' post-conviction petition was procedurally barred, and we reverse the district court's order granting her petition for a writ of habeas corpus.

---

[13]Hearing on S.B. 481 Before the Assembly Comm. on Judiciary, 70th Leg. (Nev., May 12, 1999).

