# IN THE SUPREME COURT OF THE STATE OF NEVADA

JESSICA WILLIAMS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66579

FILED

FEB 2 6 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from an order of the district court denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Jessica Williams filed her second postconviction petition for a writ of habeas corpus on June 28, 2011. Williams raised several claims in her second petition: (1) she was not provided fair notice that she would be subject to criminal liability for driving with marijuana metabolite in her blood or urine, (2) her trial and appellate counsel were ineffective for failing to argue that marijuana metabolite was not a prohibited substance as a matter of state law, (3) her trial and appellate counsel were ineffective for failing to argue that Williams did not have fair notice that she would be subject to criminal liability for driving with marijuana metabolite in her blood or urine, and (4) this court's decision in *Williams v. State*, 120 Nev. 473, 93 P.3d 1258 (2004) (*Williams II*) was an act of judicial expansion depriving her of fair notice. Williams' petition was procedurally defective in several respects.

Williams' petition was filed more than 8 years after issuance of the remittitur on direct appeal on January 3, 2003. *Williams v. State*, 118 Nev. 536, 50 P.3d 1116 (2002). Thus, her petition was untimely filed.

16-06190

*See* NRS 34.726(1). Williams' claim that she did not have fair notice was subject to the waiver bar (NRS 34.810(1)(b)) because this claim could have been raised on direct appeal. Williams' claims that she did not have fair notice and her trial and appellate counsel were ineffective were an abuse of the writ as they were new and different from the claim litigated in her first petition. *See* NRS 34.810(1)(b)(2); NRS 34.810(2). Williams could have raised her judicial expansion claim in a petition for rehearing in *Williams II.* Williams' petition was procedurally barred absent a demonstration of good cause and actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3).

*Good Cause*

*1. Postconviction counsel's conflict of interest cannot provide good cause.*

The district court determined that Williams demonstrated good cause to excuse her late and successive petition because her postconviction counsel in the first proceedings had a conflict of interest as they represented her at trial and on appeal. The State argues that this decision was incorrect because there was no right to counsel in the postconviction proceedings and thus no right to the effective assistance of counsel. We agree.

This court has recognized that good cause must afford a legal excuse. *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). In order to demonstrate good cause, a petitioner must show that an impediment external to the defense prevented her from complying with the procedural rules. *Id.* A claim of ineffective assistance of counsel may provide good cause but only where there is a right to counsel (statutory or constitutional) and the right to the effective assistance of counsel, *see Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997); *McKague*

v. *Warden*, 112 Nev. 159, 165 n.5, 912 P.2d 255, 258 n.5 (1996), and only where the good cause claim explains the procedural defects and is not itself procedurally barred, *Hathaway*, 119 Nev. at 252, 71 P.3d at 506; *see also Edwards v. Carpenter*, 529 U.S. 446, 451, 453 (2000) (explaining that an ineffective-assistance-of-counsel-good-cause argument must not itself be procedurally defaulted); *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (explaining that a petitioner may demonstrate good cause where the procedural default is the result of ineffective assistance of counsel).

A conflict-of-interest claim is derived from a claim of ineffective assistance—it is counsel's breach of the duty of loyalty that gives rise to a claim that counsel was ineffective due to a conflict of interest. *See Glasser v. United States*, 315 U.S. 60, 70, 75-76 (1942) (framing a conflict-of-interest claim as a claim that the defendant was denied the effective assistance of counsel); *Holloway v. Arkansas*, 435 U.S. 475, 482-83 (1978) (same); *Cuyler v. Sullivan*, 446 U.S. 335, 345, 348-50 (1980) (same); *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984) (same); *Mickens v. Taylor*, 535 U.S. 162, 166, 175 (2002) (same); *Mannon v. State*, 98 Nev. 224, 226, 645 P.2d 433, 434 (1982) (framing claim as "his trial attorney's conflicting duties operated to deny him his sixth amendment right to effective assistance of counsel"); *Hayes v. State*, 106 Nev. 543, 556, 797 P.2d 962, 970 (1990) (acknowledging that this court has allowed ineffective-assistance-of-counsel claims on direct appeal when they relate to a conflict of interest), *overruled on other grounds by Ryan v. Eighth Judicial Dist. Court*, 123 Nev. 419, 168 P.3d 703 (2007). A conflict-of-interest claim thus requires there be a right to counsel and a right to the effective assistance of counsel. In Nevada, there is no constitutional or statutory right to postconviction counsel and no right to the effective

Supreme Court
OF
Nevada

(O) 1947A

3

assistance of postconviction counsel in non-capital cases. *See Brown v. McDaniel*, 130 Nev., Adv. Op. 60, 331 P.3d 867, 870 (2014). Because there is no constitutional or statutory right to postconviction counsel and no right to the effective assistance of postconviction counsel, postconviction counsel's conflict of interest cannot provide good cause in Nevada.[1] Several federal courts have reached a similar conclusion. *See Weeks v. Angelone*, 176 F.3d 249, 273-74 (4th Cir. 1999); *Williams v. Thaler*, 602 F.3d 291, 308-09 (5th Cir. 2010); *Bonin v. Calderon*, 77 F.3d 1155, 1159-60 (9th Cir. 1996); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996); *Nevius v. Sumner*, 105 F.3d 453, 459-60 (9th Cir. 1996); *Ortiz v. Stewart*, 149 F.3d 923, 932-33 (9th Cir. 1998).

Further, Williams waited too long to file her second petition. We find unavailing Williams' argument that any delay should be measured from the time that her counsel with an alleged conflict was removed and new conflict-free counsel was appointed in the federal case as her conflict-of-interest-good-cause argument was reasonably available to

---

[1]The district court mistakenly relied upon *United States v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996) and other out-of-state cases in determining that there was an inherent conflict of interest. First, conflict-of-interest jurisprudence requires Williams to demonstrate an actual conflict of interest adversely affected counsel's performance, and it is insufficient to simply argue that there was an inherent conflict. *See Sullivan*, 446 U.S. at 348, *Strickland*, 466 U.S. at 692. More importantly, all but 2 of the cited cases involved situations where there was a right to counsel. In the 2 cases involving postconviction proceedings, *Roberts v. State*, 141 So. 3d 1139 (Ala. Crim. App. 2013), and *People v. Edwards*, 497 N.E.2d 1218 (Ill. App. 1986), *vacated by* 521 N.E.2d 939 (Ill. 1988), neither of these cases is persuasive as there is no indication that these states have similar rules regarding the appointment of postconviction counsel. And notably, the *Edwards* case was vacated in its entirety.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

her within one year from the decision in *Williams II.* Williams was on notice in 2003 in the first postconviction proceedings that there was an issue relating to a conflict of interest with her postconviction counsel. Even discounting this early notice, Williams was also made aware of the conflict-of-interest issue in 2009 when it was raised in the context of the federal habeas corpus proceedings as providing good cause. *See Williams v. Bodo,* No. 2:04-cv-01620-KJD-LRL (D. Nev. March 5, 2009). A party may not delay in presenting a good cause argument once the party is aware of the factual circumstances giving rise to the claim. *See Hathaway,* 119 Nev. at 253, 71 P.3d at 506 (recognizing that a good cause argument must be raised in a reasonable time and all claims reasonably available must be raised in a timely fashion).

Finally, we note a practical limitation of this good cause argument. Even assuming that postconviction counsel's conflict of interest could provide good cause, this argument would only provide good cause for raising claims of ineffective assistance of trial and appellate counsel— claims allegedly not raised due to postconviction counsel's conflict of interest in the first postconviction proceedings. Williams' conflict-of-interest argument would not provide good cause for her claim that she was not provided fair notice that she was prohibited from driving with marijuana metabolite as it does not explain why this claim was not raised previously. The alleged conflict of interest further does not explain why Williams did not litigate her judicial expansion claim in a timely fashion from the decision in *Williams II.* A claim that postconviction counsel was ineffective will not provide good cause for a late and successive petition. *See McKague,* 112 Nev. at 163-65, 912 P.2d at 258; *Crump,* 113 Nev. at 303, 934 P.2d at 253; *Brown,* 130 Nev., Adv. Op. 60, 331 P.3d at 870.

*2. Williams' equal protection argument does not provide good cause.*

The district court also determined that Williams had demonstrated good cause because her right to equal protection was violated when this court did not follow a general practice of taking corrective action *sua sponte* due to postconviction counsel's conflict of interest. Williams asserts that unpublished decisions demonstrate "this Court has ruled that the existence of such a conflict requires that a habeas corpus petitioner be allowed to litigate an otherwise successive and untimely petition, if he or she has been represented by counsel burdened with such a conflict during litigation of an initial habeas corpus petition."[2] There are several problems with this good cause argument.

"The Equal Protection Clause of the Fourteenth Amendment mandates that all persons similarly situated receive like treatment under the law." *Gaines v. State*, 116 Nev. 359, 371, 998 P.2d 166, 173 (2000); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Williams, however, fails to make any cogent argument or demonstrate that she is similarly situated to the individuals in her list of unpublished decisions. Williams fails to allege that the rules regarding the

---

[2]Williams' examples include: *Moran v. State*, Docket No. 28188 (Order Dismissing Appeal, March 21, 1996); *Hankins v. State*, Docket No. 20780 (Order of Remand, April 24, 1990); *Nevius v. Warden*, Docket Nos. 29027, 29028 (Order Dismissing Appeal and Denying Petition for Writ of Habeas Corpus, October 9, 1996); *Washington v. State*, Docket No. 34873 (Order Vacating Judgment and Remanding, June 12, 2001); *Wade v. State*, Docket No. 37467 (Order of Affirmance, October 11, 2001); *McKenna v. State*, Docket No. 18074 (Order of Remand, October 29, 1987); *Elizondo v. State*, Docket No. 41555 (Order of Reversal and Remand, September 20, 2004); *Burnham v. State*, Docket No. 57715 (Order of Reversal and Remand, October 5, 2011); and *Wootson v. State*, Docket No. 56410 (Order of Reversal and Remand, March 18, 2011).

SUPREME COURT
OF
NEVADA

(O) 1947A

6

appointment of counsel were the same for her and for the individuals in her sample decisions. Williams fails to argue that the factual circumstances were similar—that the petitioners in the unpublished decisions requested the appointment of counsel with the conflict, authorized that counsel to pursue the petition, and waited years to challenge the alleged conflict of interest.

Further, Williams' list of unpublished decisions does not demonstrate that this court has a general practice of intervening *sua sponte* when postconviction counsel has a conflict of interest or that this court has determined that postconviction counsel's conflict of interest will provide good cause years after the decision on the first postconviction appeal. The decisions in *Burnham* and *Wootson* are distinguishable as the issue in those cases was whether *trial* counsel had a conflict of interest in representing a defendant in proceedings prior to sentencing. *Washington* and *McKenna* do not support Williams' argument regarding a *sua sponte* practice because the petitioners in *Washington* and *McKenna* raised the conflict-of-interest argument in their appeals from the denial of their first petitions. The conflict-of-interest issue was raised *sua sponte* in *Hankins* and *Elizondo*, but these cases involve pro se appellants, and Williams was represented by counsel in her first postconviction appeal. Nothing in *Hankins* and *Elizondo* suggests that a conflict of interest would be good cause in an untimely and successive petition filed years after the decision in the first postconviction appeal. The decision in *Nevius* does not support her argument that this court has a general practice of finding a conflict of interest to provide good cause because this court only stated that it was arguable that the conflict of interest could provide good cause. And in *Moran*, the issue was not raised *sua sponte*, and this court rejected the

argument that postconviction counsel's conflict of interest could provide good cause when there was a delay of more than 5 years after the decision in the first postconviction appeal.

The decision in *Wade* is the only one of the sample decisions that supports Williams' arguments regarding a *sua sponte* practice and postconviction counsel's conflict of interest providing good cause. However, nothing in *Wade* suggests that postconviction counsel's conflict of interest would be good cause for a petition filed years after the decision in the first postconviction appeal. Further, the decision in *Wade* is bereft of any analysis of whether postconviction counsel's conflict of interest could legally be good cause; *Wade* instead relies upon an ethical rule and a test for waiver of a conflict of interest involving trial counsel. As discussed previously, postconviction counsel's conflict of interest cannot legally provide good cause in Nevada. And this court is aware of another case, in addition to Williams' case, in which this court did not intervene *sua sponte* when postconviction counsel had a similar alleged conflict of interest— *Clark v. State*, Docket No. 58538 (Order of Affirmance, October 8, 2012). *See Clark v. Baker*, No. 3:12-cv-00579-MMD-VPC, 2014 WL 1309344, at *2-3 (D. Nev. 2014). Thus, Williams has failed to demonstrate that this court has a general practice of intervening *sua sponte* or finding postconviction counsel's conflict of interest to be good cause for a second petition filed years later.

More importantly, this court's published cases recognizing the mandatory nature of the procedural bars and rejecting claims of ineffective assistance of postconviction counsel as providing good cause outweigh any practice that can be gleaned from the unpublished decisions identified by Williams. This court's published authority indicates that

application of NRS 34.726, NRS 34.810(1)(b), and NRS 34.810(2) is mandatory, *see State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 231-32, 112 P.3d 1070, 1074-75 (2005); *State v. Haberstroh*, 119 Nev. 173, 180, 69 P.3d 676, 681 (2003), and that good cause to overcome a procedural bar must afford a legal excuse and must be an impediment external to the defense, *see Hathaway*, 119 Nev. at 252, 71 P.3d at 506. This court has repeatedly rejected the argument that a claim of ineffective assistance of postconviction counsel in a non-capital case can provide good cause. *McKague*, 112 Nev. at 163-65, 912 P.2d at 258; *Crump*, 113 Nev. at 303, 934 P.2d at 253; *Brown*, 331 P.3d at 870. As discussed previously, a conflict of interest is a claim that counsel was ineffective.

Finally, Williams' equal protection argument is flawed at its very core—equal protection does not insure against judicial error or guarantee uniformity of court decisions. *See Beck v. Washington*, 369 U.S. 541, 554-55 (1962); *see also Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006). In *Little*, the Ninth Circuit rejected a claim that this court had failed to apply existing case law to a Nevada state prisoner, stating that "Little's claim, at most, amounts to an allegation that in his case Nevada law was misapplied or that the Nevada Supreme Court departed from its earlier decisions. Under clearly established Supreme Court law, such contention neither gives rise to an equal protection claim, nor provides a basis for habeas relief." *Little*, 449 F.3d at 1082. Williams' argument fails for similar reasons, and therefore, she fails to demonstrate that an equal protection violation provides good cause in this case. Thus, to the extent the district court determined that Williams' equal protection argument provided good cause in this case, we conclude that decision was in error.

*Actual Prejudice*

In addition to demonstrating good cause, Williams must demonstrate actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3). To demonstrate actual prejudice, a petitioner must demonstrate error that worked to her actual and substantial disadvantage. *Hogan v. Warden,* 109 Nev. 952, 959-60, 860 P.2d 710, 716 (1993). Regarding her claims of ineffective assistance of trial and appellate counsel, Williams must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687-88; *Warden v. Lyons,* 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). To demonstrate prejudice for failing to raise a claim on direct appeal, a petitioner must demonstrate that the omitted issue would have had a reasonable probability of success on appeal. *Kirksey v. State,* 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996). Both components of the inquiry must be shown, *Strickland.* 466 U.S. at 697. We address the merits of Williams' claims of ineffective assistance of counsel and judicial expansion only in the context of determining whether she has demonstrated actual prejudice.

*1. Trial and appellate counsel were not ineffective for failing to argue that marijuana metabolite is not a prohibited substance as a matter of state law.[3]*

Williams' claim that her trial and appellate counsel were ineffective for failing to argue that marijuana metabolite is not a prohibited substance as a matter of state law is without merit. Williams' counsel raised the underlying issue, whether marijuana metabolite is a prohibited substance as a matter of state law, in the first postconviction proceedings. *Williams II,* 120 Nev. at 475-76, 93 P.3d at 1259. In *Williams II,* this court determined that the claim was subject to the waiver bar (NRS 34.810(1)(b)) and that Williams had failed to demonstrate good cause for her failure to raise the claim on direct appeal. *Id.* at 477-78, 93 P.3d at 1260-61. This court further determined that Williams did not demonstrate actual prejudice because marijuana metabolite is a prohibited substance under Nevada's statutory scheme and that her argument failed despite any ambiguity in NRS 484.1245, a general-definition statute, because the legislative history indicated that the Legislature specifically intended marijuana metabolite to be included in the definition of a prohibited substance. *Id.* at 478-81, 93 P.3d at 1261-63. Under these circumstances, Williams fails to demonstrate that her trial and appellate counsel were ineffective because this court has already determined that the underlying claim lacked merit.

---

[3]For the sake of consistency and to lessen any confusion, we have cited to the versions of the statutes in effect at the time of Williams' crimes. NRS 484.013 (1999 Nev. Stat., ch. 622, §21, at 3415); NRS 484.1245 (1999 Nev. Stat., ch. 622, §20, at 3414); NRS 484.379 (1999 Nev. Stat., ch. 622, §23, at 3415-16); NRS 484.3795 (1999 Nev. Stat., ch. 622, §28, at 3422).

*2. Trial and appellate counsel were not ineffective for failing to argue that Williams did not have fair notice that having marijuana metabolite in her blood would subject her to criminal liability.*

Williams argues that her trial and appellate counsel were ineffective for failing to argue that she did not have fair notice that having marijuana metabolite in her blood would subject her to criminal liability.[4] Williams fails to demonstrate that her counsel were ineffective because she had fair notice at the time of her crime that driving with marijuana metabolite subjected her to criminal liability, and her conduct was clearly proscribed by NRS 484.379 and NRS 484.3795 regardless of any ambiguity in NRS 484.1245. *See United States v. Williams*, 553 U.S. 285, 304 (2008) (stating that "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited"); *United States v. Lanier*, 520 U.S. 259, 266 (1997) (recognizing a statute must not be "so vague that men of common intelligence must necessarily guess at its meaning" and requiring resolution of any ambiguity in a criminal statute as to apply only to conduct clearly covered); *State v. Hughes*, 127 Nev. 626, 628, 261 P.3d 1067, 1069 (2011) (providing that a statute is vague if it fails to provide fair notice of what is prohibited to a person of ordinary intelligence).

Williams' fair notice argument is premised upon an inconsistency in the definition of a prohibited substance in NRS 484.1245, a general statute. However, Williams' reliance upon NRS 484.1245 as the only statute to provide fair notice is misplaced as NRS 484.379 and NRS

---

[4]As discussed previously, Williams' conflict-of-interest good cause argument does not provide good cause to raise the underlying fair notice claim independently of her claims of ineffective assistance of trial and appellate counsel.

484.3795 provided Williams with notice that it was unlawful to drive with marijuana metabolite in her blood or urine. Williams was convicted of violating NRS 484.379, driving with a prohibited substance (marijuana and/or marijuana metabolite) in excess of the statutory limits, and NRS 484.3795, causing the death of persons while driving with a prohibited substance in violation of NRS 484.379. NRS 484.379(3)(h) informed Williams that it was unlawful to drive with marijuana metabolite equal to or greater than 15 nanograms per milliliter in urine or 5 nanograms per milliliter in blood. NRS 484.3795(1)(f) provided notice that she would be guilty of a category B felony if she drove with a prohibited substance in her blood or urine in an amount equal to or greater than the amount set forth in NRS 484.379(3). The inclusion of marijuana metabolite in NRS 484.379(3) in specified amounts provided Williams, or any person of ordinary intelligence, fair notice that driving with marijuana metabolite in excess of the statutory amounts subjected her to criminal liability.

Likewise, to the extent that there is any ambiguity in the general definition of a prohibited substance set forth in NRS 484.1245, Williams' conduct was clearly covered under the more specific statutes— NRS 484.379 and NRS 484.3795. Even assuming Williams is correct that there is some inconsistency in the general definition of a prohibited substance set forth in NRS 484.1245, it would be unreasonable not to read inclusion of marijuana metabolite within the definition of a prohibited substance when the Legislature included the words "marijuana metabolite" in the list of prohibited substances in NRS 484.1245 and included marijuana metabolite in NRS 484.379 and NRS 484.3795 (by reference), the offense statutes. Notably, NRS 484.013, stated that the general definitions, including NRS 484.1245, provided meaning for terms

in the chapter "unless the context otherwise requires." The context of NRS 484.379(3) would require a different definition of a prohibited substance than set forth in NRS 484.1245 if the definition in NRS 484.1245 did not include marijuana metabolite because marijuana metabolite is listed in a specified amount in NRS 484.379(3).

Thus, because the underlying fair notice argument lacks merit, Williams fails to demonstrate that the performance of her trial counsel and appellate counsel was deficient or that there was a reasonable probability of a different outcome at trial or on appeal if a fair notice claim had been made. Therefore, Williams fails to demonstrate actual prejudice to overcome application of the procedural bars.

*3. This court did not judicially expand the meaning of prohibited substance in Williams II, depriving Williams of fair notice.*

Williams argues that this court's decision in *Williams II* was a judicial expansion of NRS 484.1245 depriving her of fair notice that she was not permitted to drive with marijuana metabolite in her system.[5] To

---

[5]The federal district court has criticized this court's reliance upon the legislative history in *Williams II* in determining that a marijuana metabolite was a prohibited substance as a matter of state law because this court did not include any references to specific statements by legislators showing an intent to include marijuana metabolite as a prohibited substance even when it was not classified in a schedule. *See Williams v. Bodo*, No. 2:04-cv-01620-KJD-LRL, at *7 (D. Nev. September 29, 2010). As explained in *Williams II*, the legislative history shows the Legislature expressly included marijuana metabolite as a prohibited substance. 120 Nev. at 480, 93 P.3d at 1262. The Legislature began the bill draft process with the crime of driving with a controlled substance in any detectable amount and a list of controlled substances relevant to license revocation. Notably, that list did not include marijuana or marijuana metabolite. *Id.* Over the course of the session, the Legislature added the definition of a prohibited substance contained in NRS 484.1245 and specifically added marijuana and marijuana metabolite to that list

*continued on next page...*

demonstrate actual prejudice for presenting this claim in an untimely and successive petition, Williams must demonstrate a constitutional error that worked to her actual and substantial disadvantage.[6]

Williams fails to demonstrate actual prejudice because her judicial-expansion claim lacks merit. Judicial expansion broadens the scope of a statute beyond the statutory language in a way that was unforeseeable. *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001). "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266. Said in another way, "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been

---

*...continued*
and to NRS 484.379. *Id.* The Legislature further chose to set forth statutory amounts of prohibited substances rather than following the approach in the original bill of punishing any detectable amount. *Id.* This is evidence of the Legislature's thoughtful decision to include marijuana metabolite within the definition of a prohibited substance regardless of the language referring to the schedule.

[6]As discussed previously, Williams' conflict-of-interest good cause argument does not provide good cause for the judicial-expansion claim in a petition filed years after the decision in *Williams II*. From the structure of her petition, Williams appears to have also presented a standalone claim that marijuana metabolite was not a prohibited substance as a matter of state law, a repetition of the claim litigated in *Williams II*. Because the standalone claim was determined to be procedurally barred in *Williams II* pursuant to NRS 34.810(1)(b) (the waiver bar) and because Williams presents no argument that this court erred in determining that she failed to demonstrate good cause in *Williams II*, relitigation of the standalone claim is barred by the doctrine of the law of the case. *See Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975); *see also Hsu v. County of Clark*, 123 Nev. 625, 629-32, 173 P.3d 724, 728-30 (2007).

expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) (quoting Hall, *General Principles of Criminal Law* 61 (2d ed. 1960)). In *Bouie*, the Court observed that the problem with judicial expansion and fair notice arises when courts, unforeseeably, broaden statutory language that is narrow and precise on its face. *Id*. at 352. Williams' judicial-expansion argument fails for several reasons.

First, Williams' judicial-expansion argument is premised upon NRS 484.1245 being the sole statute to provide fair notice of what is a prohibited substance. For the reasons discussed previously, this argument is unsound.

More importantly, Williams' judicial-expansion argument fails because NRS 484.1245 is not drafted narrowly and precisely. Williams' argument in *Williams II* and in this appeal is premised upon ambiguity and inconsistency in NRS 484.1245. Thus, it was entirely proper for this court in *Williams II* to examine the statutory scheme in NRS chapter 484, including NRS 484.379 and NRS 484.3795, and the legislative history to answer the question of whether marijuana metabolite was a prohibited substance as a matter of state law.

Finally, the plain language of NRS 484.1245 included the words "marijuana metabolite." It is difficult to conceive under these circumstances how this court expanded the scope of NRS 484.1245 in a novel, unforeseeable, or indefensible fashion by reading the words "marijuana metabolite" as being included in the definition of a prohibited substance when those exact words were used. Thus, Williams' fails to demonstrate actual prejudice to overcome the filing of a late petition.

*Conclusion*

Although the district court erred in determining that Williams had demonstrated good cause for the reasons discussed previously, the district court correctly determined that Williams had *not* demonstrated actual prejudice. Thus, we conclude the district court reached the correct decision in denying the petition as procedurally barred. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Pickering

SAITTA, J., concurring:

I concur in the decision to affirm the denial of Williams' petition. I recognize that Williams' good cause argument lacks legal merit because she did not have the right to the appointment of counsel or the effective assistance of that counsel pursuant to our decision in *Brown*, 130 Nev., Adv. Op. 60, 331 P.3d at 870. However, for the same reasons discussed in the dissenting opinion in *Brown, see id.*, 331 P.3d at 875 (Cherry and Saitta, JJ, dissenting), I believe that there should be the right to the effective assistance of counsel in the first postconviction proceedings.

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A

17

cc: Hon. Michelle Leavitt, District Judge
Federal Public Defender/Las Vegas
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A